UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

INSURANCE KING AGENCY, INC.,

Plaintiff,

v.

DIGITAL MEDIA SOLUTIONS, LLC, et al.,

Defendants.

Case No.:  21-cv-1539-BAS-DEB

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**

**[DKT. NO. 31]**

## I.      INTRODUCTION

Before the Court is Plaintiff Insurance King Agency, Inc.'s Motion to Compel Defendant Digital Media Solutions, LLC Responses to Request for Production, Set One. Dkt. No. 31. Defendants (collectively "Digital Media Solutions") filed an Opposition. Dkt. No. 32. Having considered the parties' submissions and supporting exhibits, the Court GRANTS in part and DENIES in part Insurance King's Motion to Compel.

## II.     BACKGROUND

This is a suit for alleged Lanham Act and related California unfair competition violations. Insurance King (an insurance broker specializing in automobile insurance) claims Digital Media Solutions uses Insurance King's trademarked name in advertisements to generate "leads" that Digital Media Solutions sells to third-party insurance companies.

Dkt. No. 24 at 8–9.[1]  Insurance King alleges Digital Media Solutions "places bids through Google Adwords' Pay Per Click [("PPC")] program" for Insurance King's trademarked name "specifically targeting customers searching for [Insurance King]." *Id.* at 7. Once a web user searches for Insurance King, Digital Media Solutions' advertisements "deceive [that] web user[ ] into the mistaken belief that by clicking through the online advertisement the web user is communicating with [Insurance King]." *Id.* Digital Media Solutions then sells those leads to third-party insurance companies, who are Insurance King's competitors. *Id.* at 8. Insurance King also alleges Digital Media Solutions' advertisements "falsely lead consumers [who searched for Insurance King] to believe [Digital Media Solutions] itself is an insurance company or broker/agent offering . . . the 'lowest quotes' from 'top rate providers' 'in under 60 seconds' at '$1/Day,'" but Digital Media Solutions is not an insurance company, broker, or agent, and it does not "evaluate whether [its] . . . ads . . . are true . . . ." *Id.* at 8–9.

At issue here are Insurance King's requests for production of documents ("RFP") seeking: Digital Media Solutions' gross revenues (RFP No. 26); agreements with and investigations of the third parties to whom Digital Media Solutions sells its leads (RFP Nos. 2 and 3); consumer complaints regarding third parties and PPC advertisements (RFP Nos. 10 and 14); evidence certain third-party insurance companies are Digital Media Solutions' clients (RFP Nos. 17 through 22); and support for Digital Media Solutions' claims that third parties are "top rated providers" and offer the "lowest insurance quotes" (RFP Nos. 7 and 9).

Defendants objected to each RFP based on relevance, overbreadth, proportionality, privilege, and privacy. Defendants also provided substantive responses to RFP Nos. 7, 9, and 26.

---

[1]     When referencing page numbers for documents filed with the Court, the Court's citation refers to the page numbers assigned by the Court's CM-ECF system.

The Court held a discovery conference (Dkt. No. 30), and Insurance King's Motion to Compel followed.

## III.   LEGAL STANDARD

"[B]road discretion is vested in the trial court to permit or deny discovery . . . ." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (quotation omitted). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Even after the 2015 amendments to Rule 26, "discovery relevance remains a broad concept." *Fed. Nat'l Mortg. Ass'n v. SFR Invs. Pool 1, LLC*, No. 14-cv-02046-JAD-PAL, 2016 WL 778368, at *2 n.16 (D. Nev. Feb. 25, 2016); *see also Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*, No. 15-cv-01735-H-RBB, 2016 WL 7665898, at *2 (S.D. Cal. Sept. 20, 2016) ("Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that may be in the case.") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978)).

The party seeking to compel discovery has the burden of establishing its request satisfies the relevancy requirements of Rule 26(b)(1). *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. July 17, 1995). "Once the propounding party establishes that the request seeks relevant and proportional information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Cancino Castellar v. McAleenan*, No. 17-cv-491-BAS-AHG, 2020 WL 1332485, at *4 (S.D. Cal. Mar. 23, 2020) (quoting *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009)).

A request for production of documents may relate to any matter that may be inquired into under Rule 26(b). Fed. R. Civ. P. 34(a)(1). For each request for production, "the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

/ /

**IV.   DISCUSSION**

Insurance King contends Digital Media Solutions refuses to provide responsive information to RFPs seeking its "gross revenue information that is attributable to [Defendants'] wrongful activity" (RFP No. 26). Dkt. No. 31 at 5. Insurance King further contends Digital Media Solutions is improperly withholding information regarding the third parties that purchase consumer leads (RFP Nos. 2 and 3), consumer complaints (RFP Nos. 10 and 14), other insurance carriers (RFP Nos. 17 through 22), and certain representations on Digital Media Solutions' website (RFP Nos. 7 and 9). *Id.* at 13–14.

**A. Digital Media Solutions' Gross Revenues (RFP No. 26)**

Insurance King's RFP No. 26 seeks:

> DOCUMENTS which CONCERN or REFLECT financial information as to the revenues and profits YOU have realized through the sale of LEADS including the term 'KING', and similar words, in your pick per click advertisements for auto insurance.

Dkt. No. 31-2 at 21.

Defendants raised various objections to this request (i.e., privacy, privilege, relevance, and proportionality), but proceeded to respond, "[a]fter conducting a diligent search and reasonable inquiry, [Digital Media Solutions] states that it will produce documents responsive to this Request." *Id.* at 22. Digital Media Solutions then supplemented its response as follows: "After conducting a diligent search and reasonable inquiry, [Digital Media Solutions] states that it produced documents sufficient to show the revenues and profits to [Digital Media Solutions] associated with the ads placed for auto insurance that related to the search term 'King.'" Dkt. No. 31-3 at 7.

Insurance King argues Digital Media Solutions "indicated initially in its response that it would produce" the gross revenue information "from the sale of *all leads*" but it "ultimately reneged" and produced only "revenues specifically related to only Insurance King leads." Dkt. No. 31 at 11–12 (emphasis added). Defendant contends it complied with

the request, which is "limited to revenues and profits from the sale of leads generated as a result of ads using the term 'King' and similar words." Dkt. No. 32 at 16.

The parties' dispute, therefore, is whether this RFP seeks all gross revenues (as Insurance King contends), or gross revenues generated from "King" leads (as Digital Media Solutions contends). Dkt. Nos. 31 at 11–12; 32 at 16–17.

Digital Media Solutions' reading is consistent with the plain language of the request: "revenues and profits . . . realized through the sale of leads including the term 'KING', and similar words." Digital Media solutions represents it produced documents reflecting revenues and profits "related to the search term 'King.'" Dkt. Nos. 31-2 at 22; 31-3 at 6–7. That complies with the RFP. The Court, therefore, DENIES Insurance King's Motion to Compel further responses to RFP No. 26.

### B. Documents Relating to Third-Party Agreements and Investigations (RFP Nos. 2 and 3)

Insurance King's RFP Nos. 2 and 3 seek:

> RFP No. 2: DOCUMENTS reflecting any agreements between YOU and any THIRD PARTIES to whom you send or sell any LEADS resulting from YOUR pay per click Internet advertising for auto insurance.

> RFP No. 3: DOCUMENTS evidencing any investigation or examination by YOU of the background, business reputation, financial status, products offered or reviews of the THIRD PARTIES to whom you sell or offer to sell the LEADS for auto insurance.

Dkt. No. 31-2 at 6–7.

Digital Media Solutions objects that the requests: (1) seek "confidential business or commercial documents and/or proprietary information"; (2) are irrelevant; (3) seek documents protected from disclosure by the attorney client privilege and work product doctrine; (4) are overbroad; (5) are unduly burdensome; and (6) are disproportionate to the needs of the case. *Id.*

Insurance King explains these requests seek discovery into Digital Media Solutions' representations that third parties purchasing Digital Media Solutions' leads are "top rated providers." Dkt. No. 31 at 13. The Court agrees this is relevant discovery as it pertains to Insurance King leads. To the extent the requests seek broader information (e.g., documents relating to third parties not involved in Digital Medial Solutions' sale of Insurance King leads), however, these requests are overbroad and not proportionate to the needs of this case. The misrepresentations alleged in Plaintiff's First Amended Complaint all arise out of allegedly misappropriated Insurance King leads. Dkt. 24 at 12–13 and 25. Plaintiff's RFPs, however, seek documents regarding third parties not associated with Insurance King leads.

The Court, therefore, sustains Digital Media Solution's overbreadth and proportionality objections and limits both requests to third parties to whom Digital Media Solutions sold leads and advertising implicating Insurance King's trademarked name. *See Green v. Baca*, 219 F.R.D. 485, 490 (C.D. Cal. 2003) ("It is within the discretion of a court ruling on a motion to compel to narrow the requests rather than sustain the responding party's objections to them in toto. In doing so, the court effectively sustains an objection that the requests are . . . overbroad in part, and overrules it in part.").[2]

---

[2] The Court overrules the remainder of Digital Media Solutions' objections. Digital Media Solutions' objection that third-party discovery requests seek "highly sensitive commercial information" about Insurance King's competitors (Dkt. No. 32 at 21–22) is mitigated by the Court's Protective Order (Dkt. No. 19). *See Lauter v. Rosenblatt*, No. 15-cv-08481-DDP-KSx, 2019 WL 4138020, at *15 (C.D. Cal. July 1, 2019) ("The purpose of a protective order during discovery is to preserve rights of privacy and confidentiality as to the disclosure for personal and/or commercially sensitive information."). Digital Media Solutions' privilege and unduly burdensome objections are waived because Digital Media Solutions did not raise them in its Opposition and there is no evidence Digital Media Solutions provided Insurance King a privilege log. *See Sherwin-Williams Co. v. Earl Scheib of Cal. Inc.*, No. 12-cv-2646-JAH-JMA, 2013 WL 12073836, at *2 n.1 (S.D. Cal. Mar. 4, 2013) (objections raised in response to the discovery requests but not addressed in the discovery motion are moot or waived; limiting its review to arguments in the parties' briefs); *Cartwright v. Viking Industries, Inc.*, 2008 WL 4283614 at *2 (E.D. Cal.

Therefore, on or before **July 15, 2022**, Digital Media Solutions must produce responsive documents to the following revised RFP Nos. 2 and 3:

> Revised RFP No. 2: DOCUMENTS reflecting any agreements between YOU and any THIRD PARTIES to whom you send or sell LEADS arising out of the term "KING," and similar words, in your pay per click advertisements for auto insurance.

> Revised RFP No. 3: DOCUMENTS evidencing any investigation or examination by YOU of the background, business reputation, financial status, products offered or reviews of the third parties to whom you send or sell LEADS arising out of the term "KING," and similar words, in your pay per click advertisements for auto insurance.

### C. Consumer Complaints Regarding Third Parties and PPC Advertisements (RFP Nos. 10 and 14)

Insurance King's RFP Nos. 10 and 14 seek:

> RFP No. 10: COMMUNICATIONS to YOU or DOCUMENTS which evidence or refer to any complaints by consumers regarding any of the THIRD PARTIES to whom YOU have sold LEADS regarding auto insurance.

> RFP No. 14: COMMUNICATIONS to YOU or DOCUMENTS which evidence same of any complaints by consumers regarding any of the pay per click ads you have placed on the Internet regarding the sale or availability of auto insurance.

Dkt. No. 31-2 at 11, 13. Digital Media Solutions objects, in pertinent part, that the requests are overbroad and seek irrelevant information. *Id.*

Insurance King argues "these requests are directly relevant to the veracity of th[e] statement [that the third parties purchasing Defendants' leads are 'top rated providers'],

---

Sept. 11, 2008) (The failure to produce a privilege log to support an assertion of privilege "may be deemed to waive it.").

whether [Digital Media Solutions] had any basis for this statement, and if there has been actual consumer confusion . . . ." Dkt. No. 31 at 13.

Insurance King's requests are overbroad because they seek all consumer complaints, regardless of whether those complaints relate to the allegations in Plaintiff's First Amended Complaint.

The Court sustains Digital Media Solution's overbreadth objection and limits the requests to complaints with Insurance King's trademarked name.[3] Therefore, on or before **July 15, 2022**, Digital Media Solutions must produce responsive documents to the following revised RFP Nos. 10 and 14:

> Revised RFP No. 10: COMMUNICATIONS to YOU or DOCUMENTS which evidence or refer to any complaints by consumers regarding any of the THIRD PARTIES to whom you have sold LEADS for auto insurance arising out of pay per click advertisements including the term "KING," and similar words.

> Revised RFP No. 14: COMMUNICATIONS to YOU or DOCUMENTS which evidence any complaints by consumers regarding the pay per click ads for auto insurance you have placed on the Internet that included the term "KING," and similar words.

**D. Documents Showing Digital Media Solutions' Clients (RFP Nos. 17–22)**

Insurance King's RFP Nos. 17 through 22 seek documents relating to whether Adriana's Insurance, Pronto Insurance, Law Familia Insurance, Kemper Insurance, Fred Loyas Insurance, and AMAX Auto Insurance are Defendants' clients. Without providing responsive documents, Digital Media Solutions objected that these RFPs are overbroad, unduly burdensome, not proportional, irrelevant, and seek privileged and private information.

---

[3]     The Court overrules Digital Media Solutions' remaining objections (privacy, privilege, and unduly burdensome) for the same reasons discussed in footnote 2 above.

Insurance King does not assert the listed entities are among the third parties to whom Digital Media Solutions sold leads. Instead, Insurance King "believes . . . [Digital Media Solutions] has no relationship with these insurance brokers/carriers, but simply uses their names in its advertising as a deceptive practice" the same way Digital Media Solutions "has used Insurance King's trademark to deceive consumers . . . ." Dkt. No. 31 at 14. Insurance King argues this information is "directly relevant to" Defendants' "mental state" (i.e., why would Digital Media Solutions "essentially admit its practice is wrongful by agreeing to be enjoined from the practice vis-á-vis Insurance King but then continue to engage in the same practice vis-á-vis other brokers"?). *Id.*

Insurance King has not carried its burden of establishing the relevance of these requests. Whether Digital Media Solutions violated the rights of other brokers after agreeing to an injunction with Insurance King is not relevant to any claim in this case. To the extent the requested discovery has any arguable relevance, the Court exercises its discretion to disallow the discovery here in light of its tangential nature. *See Strategic Partners, Inc. v. FIGS, Inc.*, No. 19-cv-2286-GW-KSx, 2021 WL 4813646, at *4 (C.D. Cal. Aug. 12, 2021) ("In resolving discovery disputes, the court may exercise its discretion in determining the relevance of discovery requests, assessing oppressiveness, and weighing those facts in deciding whether discovery should be compelled.") (quotation omitted); *McCall v. State Farm Mut. Auto. Ins. Co.*, No. 16-cv-01058-JAD-GWF, 2017 WL 3174914, at *9 (D. Nev. July 26, 2017) ("If the requirement for proportionality in discovery means anything . . . it must mean that burdensome, tangential discovery should not be permitted based on the mere possibility that something may turn up to support what is otherwise only speculation.").

The Court, therefore, denies Insurance King's Motion to Compel further responses to RFP Nos. 17 through 22.

//
//
//

### E. Documents Supporting Digital Media Solutions' Claims that Third Parties Are "top rated providers" and Offer the "lowest insurance quotes" (RFP Nos. 7 and 9)

Insurance King's RFP Nos. 7 and 9 (seeking documents "which support . . . that consumers will obtain the 'lowest insurance quotes'" and "which identify 'top rated providers'") (Dkt. No. 31-1 at 9–11) are not properly before the Court. Defendants claim the parties have not met and conferred regarding them (Dkt. No. 32 at 20), and they were neither discussed during the Court's Discovery Conference nor included in the Court's subsequent briefing schedule.[4] The Court agrees. The parties must comply with the Court's chambers rules, local rules, and Federal Rules of Civil Procedure prior to raising any discovery dispute with the Court. The Court, therefore, DENIES Insurance King's Motion to Compel further response to RFP Nos. 7 and 9. *Shaw v. Cty. of San Diego*, No. 06-cv-2680-IEG-POR, 2008 WL 9411414, at *2 (S.D. Cal. Oct. 9, 2008) (denying plaintiff's motion to compel for failing to meet and confer).

## V.   CONCLUSION

Based on the foregoing, the Court GRANTS in part and DENIES in part Insurance King's Motion to Compel. Dkt. No. 31. On or before **July 15, 2022**, Digital Media Solutions must provide responsive information to Insurance King's RFP Nos. 2, 3, 10, and 14 as revised herein.

**IT IS SO ORDERED**.

Dated:  June 30, 2022

Honorable Daniel E. Butcher
United States Magistrate Judge

---

[4]   Additionally, based on Digital Media Solutions agreement to "produce all documents responsive" (Dkt. No. 31-2 at 10), any issues regarding this RFP appear moot.

10