**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INSURANCE KING AGENCY, INC., <br><br> Plaintiff, <br><br> v. <br><br> DIGITAL MEDIA SOLUTIONS, LLC, *et al.*, <br><br> Defendants. | Case No. 21-cv-01539-BAS-DEB <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR AMENDED PRELIMINARY INJUNCTION (ECF No. 29)** |

Before the Court is Plaintiff Insurance King Agency's motion for amended preliminary injunction. (Mot., ECF No. 29.) Defendants Digital Media Solutions, LLC and UE.CO (f/k/a Underground Elephant d/b/a ZipQuote.com) oppose the motion (Opp'n, ECF No. 33) and Plaintiff replies (Reply, ECF No. 36). The Court finds the motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons discussed below, the Court **DENIES** Plaintiff's motion and refuses to amend the preliminary injunction.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Defendants operate a marketing business that generates leads for automobile insurance companies. (Opp'n 2; Lomas Decl. ¶ 2, ECF No. 33-2.) Plaintiff—an insurance broker specializing in low-cost automobile insurance policies—sued Defendants for federal and state law claims including trademark infringement, false advertising, and unfair

competition. (Compl., ECF No. 1.) Plaintiff pled that it owns two trademarks: (1) the phrase "Insurance King"; and (2) a graphic image of a lion also containing the phrase "Insurance King" (collectively, the "Trademarks"). (*Id.* ¶¶ 20–21.) Plaintiff claims that Defendants infringed its Trademarks by bidding on them in search engine advertising[1] so that when consumers search for "Insurance King" or similar phrases in their internet search engine, an advertisement for Defendants' unaffiliated website appears above other search results. (*Id.* ¶ 26.) Plaintiff claims that Defendants' deceptive advertisements cause consumers to believe they are contacting Plaintiff when they are not, and that Defendants intentionally engage in this advertising practice to trade off of Plaintiff's good will and pass off their services as those of Plaintiff. (*Id.* ¶¶ 26–27.)

After filing its complaint, Plaintiff filed a motion for preliminary injunction. (ECF No. 12.) Before the Court considered the motion, the parties stipulated to a preliminary injunction and jointly moved the Court for approval. (ECF No. 16.) The Court granted the joint motion and entered the parties' stipulated preliminary injunction. (Prelim. Inj., ECF No. 17.) As a result, Defendants were enjoined from bidding on variations of the search terms "king(s) insurance(s)" in search engine advertising. (*Id.*).

Plaintiff later amended its complaint, maintaining the same claims against Defendants but including allegations concerning broader illegal business practices. (FAC, ECF No. 24.) In the FAC, Plaintiff added allegations that Defendants' advertisements—including those not involving Plaintiff's Trademarks—falsely lead consumers to believe that Defendants operate an insurance company or brokerage, "when all [Defendants do] is sell an intake form obtained from the consumer to whomever purchases the lead." (*Id.* ¶ 29.) Plaintiff alleges that Defendants illegally solicit the sale of insurance despite not being licensed to do so in any state, and that Defendants do not vet the insurance companies who

---

[1] Defendants explain that they use the search engine advertising program Google Ads, which allows companies to bid on search terms. (Opp'n 5.) If a company wins its bid on a search term, and a consumer then searches for the term using Google's search engine, the Google Ads program places the company's advertisement above or next to the other search results that are generated. (*Id.*)

purchase their leads to ensure Defendants' representations about the availability of insurance quotes from those companies are true. (*Id.*)

Consistent with its FAC, Plaintiff now seeks to amend the existing preliminary injunction. (Mot. 1.) In particular, Plaintiff's motion "seeks to address the fact that Defendants advertise and solicit customers for the sale of insurance even though . . . Defendants are not licensed as a broker or agency[.]" (*Id.* at 2.) Though the Court has already enjoined Defendants from bidding on Plaintiff's Trademarks in their search engine advertising (Prelim. Inj.), Plaintiff contends the Court should broaden the injunction to enjoin Defendants from publishing internet advertisements that: (1) include the names of other insurance companies and insurance brokers; (2) solicit the sale of automobile insurance until Defendants become licensed to sell insurance; (3) suggest a price to the consumer for automobile insurance; and (4) suggest an affiliation with an insurance carrier or company. (Mot. 13–14.)

Defendants oppose Plaintiff's motion to expand the injunction, arguing that the existing injunction already enjoins practices involving potential infringement of Plaintiff's Trademarks that could harm Plaintiff, and that additional restrictions will "prevent [Defendants] from doing business and preclude [them] from saying truthful things about [their] services." (Opp'n 1.) Defendants do not dispute that their business is not a licensed provider of insurance; rather, they argue their business acts as a "conduit through which consumers can compare automobile insurance quotes from different providers" and does not unlawfully operate as an insurance company. (*Id.* at 2.) Defendants contend that Plaintiff is seeking to broaden the preliminary injunction to cover advertisements that do not mention "king" at all, and instead include names of other purported insurers who are not parties to this case. (*Id.* at 1.) Finally, Defendants contend that Plaintiff failed to articulate irreparable harm suffered as a result of Defendants' allegedly wrongful practices and failed to offer evidence that consumers are deceived by their advertising practices. (*Id.* at 2.)

## II. LEGAL STANDARD

"A district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) (citing *System Federation No. 91 v. Wright*, 364 U.S. 642, 647–48 (1961) (holding that a district court has "wide discretion" to modify an injunction based on changed circumstances or new facts)); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 810 (9th Cir.1963) (same). Nevertheless, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). "Under *Winter*, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). Where a plaintiff fails to demonstrate a likelihood of success on the merits, the court need not consider the remaining three *Winter* elements. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

## III. ANALYSIS

Plaintiff's motion proposes enjoining Defendants from publishing advertisements that: (1) include the names of insurance companies; (2) solicit the sale of automobile insurance; (3) suggest a price to consumers; or (4) suggest an affiliation with insurance companies. (Mot. 13–14.) To secure the proposed injunctive relief, Plaintiff must first establish that it is likely to succeed on the merits of at least one of the claims it alleges supports the expanded injunction. *See Garcia*, 786 F.3d at 740.

### A. Likelihood of Success on the Merits

Plaintiff argues it is likely to be successful on the merits of its claims for violation of: (1) 15 U.S.C. § 1125(a)(1)(B) ("Lanham Act Claim") (Compl. ¶¶ 58–64); (2) California's common law regarding unfair competition ("CA Common Law UCL Claim") (*id*. ¶¶ 65–72); (3) California Business and Professions Code § 17200 ("CA UCL Claim")

(*id.* ¶¶ 73–78), and (4) California Business and Professions Code § 17500 ("CA FAL Claim") (*id.* ¶¶ 79–84). (Mot. 8–10.) For the reasons discussed below, the Court finds that Plaintiff has failed to establish the requisite likelihood of success on the merits of any of these claims.

### 1. Plaintiff's Lanham Act Claim

Plaintiff argues that it is likely to succeed on its Lanham Act Claim based on a theory of false advertising. (Mot. 8–9.) To establish a Lanham Act false advertising claim, Plaintiff must show that: "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008). The Court finds that Plaintiff has not established a likelihood of success on the merits of its Lanham Act Claim because it failed to show that (1) Defendants' advertisements contained false statements, and (2) Plaintiff has been (or is likely to be) injured because of Defendants' conduct.

#### i. Falsity

The Lanham Act recognizes two kinds of false statements: (1) a statement that is "literally false, either on its face or by necessary implication"; or (2) those that are "literally true but likely to mislead or confuse consumers."[2] *Southland Sod Farms v. Stover Seed*

---

[2] The Court does not understand Plaintiff to be arguing that Defendants' advertising is "literally true but likely to mislead consumers." (*See* Reply 5 ("DMS' ads are literally false.").) To the extent Plaintiff advances this second theory of falsity, Plaintiff bears the burden of proving that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients. *See William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995). Plaintiff failed to provide any evidence by way of consumer surveys, declarations, or expert testimony to establish that Defendants'

*Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Here Plaintiff asserts that Defendants' advertisements are literally false insofar as they (1) include the names of other insurance companies; and (2) include a price for automobile insurance. (Mot. 5–6; Reply 5.) In these ways, Plaintiff argues Defendants' advertisements "wrongfully intimate the company providing the advertisement is authorized to sell/solicit insurance" when Defendants are not actually licensed to do so. (*Id.*)

Plaintiff's theory that Defendants' advertisements are literally false when they include the names of insurance companies and quote prices for insurance "despite the fact that Defendants can have no idea as to the viability of [the] suggested price"—is unconvincing. (Mot. 5.) Plaintiff raises the example of Defendants' advertisement: "Colonial Auto Insurance Quotes – $19 mo Auto Insurance Quotes." (*Id.* at 6. (citing Ex. 8 to Block Decl., ECF No. 29-3).) Plaintiff states that the advertisement is "clearly false as Defendant is not Colonial Auto Insurance, is not a broker for Colonial Auto Insurance, is not licensed to solicit or sell insurance, and cannot represent that $19 a month can even be obtained from Colonial Auto Insurance." (*Id.*)

The Court is not persuaded by Plaintiff's reasoning that Defendants' representations are literally false. Defendants provide a referral service in which a consumer is connected with automobile insurance quotes from a variety of insurance companies. (Opp'n 2; Lomas Decl. ¶ 2.) Thus, Defendants' example advertisement is not literally false provided a consumer could use Defendants' service to obtain an automobile insurance quote from Colonial Auto Insurance for $19 per month. At this stage of the proceedings, Plaintiff has not provided evidence that a consumer would be unable to use Defendants' website to

---

advertising actually deceived consumers, and as such Plaintiff has failed to establish falsity under the second prong. *See Southland Sod Farms*, 108 F.3d at 1140 (finding that "[r]eactions of the public are typically tested through the use of consumer surveys," but also that "expert testimony may support a showing of consumer deception"); *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1111 (9th Cir. 2012) (accepting "declaration testimony instead of consumer surveys" to prove consumer deception).

obtain the quotes advertised by Defendants.[3]  Absent evidence that Defendants' advertised quotes are unavailable to its customers, the mere fact that Defendants do not "have any control or influence over the sales process" does not make the advertisements literally false. (*See* Reply 5.)

Plaintiff's position also ignores the remainder of the advertisement, focusing only on its tag line.  The full advertisement seen by the consumer, according to Plaintiff's own evidence, includes the visible url: https://auto.free-insurance-quotes.us/ and states: "Colonial Auto Insurance Quotes – Compare & Save on Auto Insurance.  Get Quotes! Compare Plans Here."  (Ex. 8 to Block Decl.)  Plaintiff's only evidence that this advertisement is literally false is the advertisement itself.  (*Id*.)  However, the full advertisement includes the web address a consumer will arrive at if he or she engages with the advertisement, and it represents the consumer will be able to obtain quotes and compare plans. Plaintiff failed to show that consumers are unable to use Defendants' website as advertised to find quotes from featured insurers like Colonial Auto Insurance.  Thus, the Court finds that Plaintiff has not shown the advertisements to be literally false.

Plaintiff's other claim with respect to literal falsity is that Defendants' search engine advertisements falsely imply that Defendants are licensed insurers when they are not. (Mot. 5.)  Defendants respond that their advertisements never explicitly state or represent that they are licensed insurers. (Opp'n 17.)  Plaintiff argues, without authority, that "the Court can determine from the [advertisements] at issue that they are literally false and no additional context is needed." (Reply 5.)  However, according to binding precedent, to determine whether an advertising claim is literally false, the advertisement "must always be analyzed in its full context." *Southland Sod*, 108 F.3d at 1139; *see also Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995).  And in fact, courts have found that where the details of advertised services are sufficiently disclosed to consumers, they are not literally

---

[3] On the other hand, Defendants attest that they have not received any complaints from consumers indicating they are unable to obtain quotes as advertised. (Lomas Decl. ¶ 6.)

- 7 -

false. *See, e.g.*, *LegalZoom.com Inc. v. Rocket Law. Inc.*, No. CV129942-GAF-AGRX, 2013 WL 12121303, at *4 (C.D. Cal. Oct. 17, 2013) (finding that where a defendant's "short online advertisements" contained a link to its website, which provided clarifying disclosures, a reasonable jury considering the advertisement in context could conclude it was not literally false). In this case, if a consumer clicks on the link embedded in Defendants' search engine advertisements, the resulting webpage includes the disclaimer:

> [T]he specified use of this site is to accurately match users to the auto insurance companies to best meet their needs. *We do not provide insurance and do not represent any specific insurance provider . . . We are not an insurance company or agency, and we are not directly affiliated with any particular insurance company.* If you do not receive a quote from a specific company you were searching for, we recommend contacting that company directly so you can compare the quotes you receive from us with one from them.

(Opp'n 3, Lomas Decl. ¶ 3; Ex. E to Lomas Decl. 9 (emphasis added).) When considered in full context, the Court finds Plaintiff has not established that Defendants' advertisements are literally false in that they appear to come from a licensed provider of insurance. Thus, Plaintiff has failed to make out the falsity element of its Lanham Act Claim, which undermines its ability to demonstrate a likelihood of success on the merits of the claim.

### ii. Injury

Not only has Plaintiff failed to establish that Defendants' advertisements are literally false, but it has also failed to establish another necessary element of its Lanham Act Claim: injury. To establish injury, Plaintiff must show that "it has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product." *See Newcal Indus., Inc*, 513 F.3d at 1052. Plaintiff's motion omits any meaningful discussion of injury as an element of its Lanham Act Claim. (*See* Mot. 8–9.) In its Reply, however, Plaintiff suggests it is harmed when Defendants "lie[] to consumers to capture their lead" because that "lead necessarily is a lead that is not going to be presented to [Plaintiff]."

(Mot. 7.) Plaintiff suggests, without evidence, that it "lost out on thousands of sales" as a result of Defendants' illegal conduct. (Mot. 7 n.9.)

Plaintiff has not provided any evidence that Defendants' advertisements have resulted in a direct diversion of sales from itself to Defendants or a lessening of goodwill with respect to its own services. Defendants are already enjoined from bidding on Plaintiff's Trademarks in search engine advertising. (*See* Prelim. Inj.) Plaintiff argues, however, that it is not just entitled to Defendants' profits generated from leads using Plaintiff's Trademarks, but also that it is entitled to revenue generated from the sale of leads that were obtained through Defendants' other "illegal conduct." (Mot. 7 n.9.) Plaintiff never explains, however, how Defendants' purported illegal conduct diverted sales from Plaintiff to Defendant or lessened Plaintiff's goodwill.

Instead, Plaintiff speculates it is harmed "because [a consumer] will be duped into responding to [Defendants' advertisements] with a false representation about pricing and that customer then won't contact [Plaintiff]." (Reply 7.) But Plaintiff did not provide any evidence to show that consumers who would have otherwise contacted Plaintiff are duped by Defendants' advertisements. One of Plaintiff's primary concerns is that Defendants' use the names of *other* insurers in their advertisements, which falsely implies that the named companies are sponsoring the advertisement or are somehow affiliated with the advertisement. (Mot. 5.) Plaintiff's evidence (Ex. B to Kidde Decl., ECF No. 29-2) that Defendants routinely bid on and display the names of other insurers (like Colonial Auto Insurance) in their advertisements, undermines rather than strengthens its claim that Defendants are diverting sales that should have gone to Plaintiff. Plaintiff's theory of injury with respect to these advertisements requires the Court to assume—without supporting evidence—that consumers who search for a non-plaintiff insurer and wind up on Defendants' website were somehow diverted from Plaintiff. (Reply 7.)

In short, Plaintiff's argument regarding injury is unavailing and Plaintiff provides no evidence that the consumers who would have otherwise gone to Plaintiff to purchase insurance are being diverted by Defendants' advertisements.

Since Plaintiff has failed to establish multiple elements of its Lanham Act Claim for false advertising, the Court finds Plaintiff is unlikely to be successful on the merits of its claim.

### 2. Plaintiff's California Claims

Plaintiff's primary argument with respect to likelihood of success on its California claims is that each can be established by proving a violation of the Lanham Act. (Mot. 9–10.) Since the Court found that Plaintiff is unlikely to be successful on the merits of its Lanham Act Claim, Plaintiff's argument with respect to its California claims fails.

Nevertheless, Plaintiff provides a second potential basis for success on the merits of its California claims. (Mot. at 9–10.) Plaintiff argues that Defendants "target consumers in California with [] false and misleading advertisements" and improperly solicit insurance in violation of the California Insurance Code. (Mot. 4, 9–10.) Plaintiff pled that Defendants' violation of California insurance law provides a basis for both its CA UCL and FAL Claims. (Compl. ¶¶ 75, 81.)

The Court is skeptical of Plaintiff's likelihood of success on its UCL and FAL Claims where premised on Defendants' alleged violation of California's insurance laws. This is because both claims require Plaintiff to establish it suffered an injury-in-fact.[4] Plaintiff is not licensed to issue insurance policies in California. (Mot. 2.) Thus, even if Defendants' "solicitation" of California consumers violates California insurance law, Plaintiff—who admittedly cannot compete for California customers—is not injured. In other words, Defendants' outreach to California residents (which is presumably governed by California Insurance law) cannot harm Plaintiff economically since California residents could not have purchased insurance from Plaintiff in the first place. The Court is therefore

---

[4] *See* Cal. Bus. & Prof. Code §§ 17204 (UCL), 17535 (FAL); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013) ("Proposition 64 . . . restricts standing for individuals alleging UCL and FAL claims to persons who "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition.").

unconvinced that Plaintiff has suffered an injury requisite to sustain its UCL and FAL claims based on Defendants' purported violation of California insurance law.

For the reasons above, the Court finds that Plaintiff has failed to establish the requisite likelihood of success on the merits of any of the claims it alleged support an expanded injunction. As such, the Court must deny its motion for an amended preliminary injunction.[5] *See Garcia*, 786 F.3d at 740 (finding that where a plaintiff fails to demonstrate a likelihood of success on the merits, the Court need not consider remaining elements).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Amended Preliminary Injunction (ECF No. 29) and refuses to amend the preliminary injunction issued December 16, 2021.

**IT IS SO ORDERED.**

**DATED: July 14, 2022**

Hon. Cynthia Bashant
United States District Judge

---

[5] This decision does not disturb the existing preliminary injunction. The Court does not opine, herein, regarding the merits of Plaintiff's claims as they relate to the existing injunctive relief. (*See* Prelim. Inj.)